IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| TAMMY SIDERIAS, : | CIVIL ACTION |
| Plaintiff, : |  |
| v. : |  |
| : |  |
| KILOLO KIJAKAZI,[1] : | No. 21-305 |
| Commissioner of Social Security, : |  |
| Defendant, : |  |

**MEMORANDUM OPINION**

**PAMELA A. CARLOS**                                                                                     September 20, 2022
**U.S. MAGISTRATE JUDGE**

      Tammy Siderias appeals the Commissioner of Social Security's final decision to deny her claim for benefits. In particular, she contends that the unfavorable decision (1) does not accurately reflect her residual functional capacity, and (2) erroneously relies on jobs that cannot be performed by someone with the stated residual functional capacity. The Commissioner disagrees, arguing that the decision to deny benefits is supported by substantial evidence. For the reasons that follow, I will grant Ms. Siderias' request for review and remand this matter to the Commissioner for further proceedings in accordance with this opinion.

**I.     BACKGROUND**

    **A.  Factual and Procedural History**

      Ms. Siderias was born in August 1967. R. 36. She graduated high school and earned a certificate in cosmetology. R. 190. For many years, she operated a hair and tanning salon from

---

[1] Kilolo Kijakazi became Acting Commissioner of Social Security on July 9, 2021. Pursuant to Federal Rule of Civil Procedure 25(d), Ms. Kijakazi should be substituted as the defendant in this matter.

her home. R. 191, 55. However, she stopped working in July 2017, *see* R. 189, citing her back and neck pain, *see* R. 37.[2]

About a year later, on June 15, 2018, Ms. Siderias applied for supplemental security income ("SSI").[3] R. 156–65. She alleged that she was disabled based on her sacroiliac joint dysfunction, neck pain and limited mobility from neck fusion, high liver enzymes, nonalcoholic fatty liver disease, herniated discs, irritable bowel syndrome ("IBS"), asthma, degenerative joint disease of the lower leg, arthritis in her right hand, and anxiety. R. 73. Her claim was initially denied on October 10, 2018. R. 84–88. Ms. Siderias then requested a hearing before an Administrative Law Judge ("ALJ"), *see* R. 90, and a video hearing was held on November 7, 2019, *see* R. 33. After this hearing, on January 28, 2020, the ALJ issued a written decision again denying Ms. Siderias' claim. R. 14–24. The Appeals Council denied Ms. Siderias' subsequent request for review, meaning the ALJ's written opinion became the final decision of the Commissioner. *See* R. 1–3. Ms. Siderias now timely appeals.[4]

---

[2] Her inability to continue working resulted in the loss of her home later that year. R. 40. She now lives in a different house with her son and niece. *Id.*

[3] Ms. Siderias' alleged the onset date of her disability was one year prior—June 15, 2017. R. 73.

[4] The parties initially consented to the jurisdiction of United States Magistrate Judge Timothy R. Rice to conduct all proceedings, including entry of final judgment, pursuant to 28 U.S.C. § 636(c). *See* Doc. Nos. 7, 9. Following Judge Rice's retirement, the case was reassigned to me. *See* Doc. No. 22. Ms. Siderias was directed to file a new form indicating whether or not she consented to have me conduct all proceedings in this matter. Doc. No. 23. At that time, she was warned that failure to file the form at all may be deemed as consent. *Id.* Despite being reminded in a follow-up order, *see* Doc. No. 24, Ms. Siderias never filed the form, and therefore I found that she has consented to my jurisdiction, *see* Doc. No. 25.

### B. ALJ's Decision

The ALJ evaluated Ms. Siderias' claim using the five-step sequential analysis set forth in the Social Security regulations.[5] Beginning at step one, the ALJ determined that Ms. Siderias has not engaged in substantial gainful activity since she applied for benefits on June 15, 2018. R. 16.

At step two, the ALJ found that Ms. Siderias suffered from the following severe impairments: seronegative rheumatoid arthritis, osteoarthritis, degenerative disc disease, and generalized anxiety disorder. R. 17. Her asthma, while medically determinable, was deemed non-severe. *Id.*

Moving on to step three, the ALJ concluded that none of Ms. Siderias' severe impairments alone, or in combination, met or medically equaled the requirements of the impairments listed in the regulations. R. 17–18. Specifically, the ALJ compared Ms. Siderias' impairments to listings 1.04 (spinal disorders), 14.09 (inflammatory arthritis), and 12.06 (anxiety disorders). *Id.*

Before reaching step four, the ALJ considered Ms. Siderias' residual functional capacity ("RFC").[6] After reviewing the record, the ALJ determined that Ms. Siderias has the RFC to perform "light work,"[7] subject to the following restrictions:

---

[5] The sequential analysis requires the ALJ to evaluate (1) whether the claimant's work, if any, qualifies as "substantial gainful activity"; (2) whether the claimant's medically determinable impairments are severe; (3) whether any of the claimant's impairments "meet or equal the requirements for impairments listed in the regulations"; (4) whether the claimant is able to perform "past relevant work" considering her residual functional capacity; and (5) whether the claimant can adjust to other work considering her residual functional capacity, age, education, and work experience. *Hess*, 931 F.3d at 201–02 (citing 20 C.F.R. § 416.920(a)(4)(i)–(v)). The claimant has the burden of proof at steps one through four, and then at step five, the burden shifts to the Commissioner of Social Security. *Id.* at 201.

[6] Residual functional capacity is defined as "the most [a claimant] can still do despite [her] limitations." 20 C.F.R. § 416.945(a)(1).

[7] The regulations define "light work" as work that "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 416.967(b). "Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." *Id.* More specifically, the Social

> [S]he can occasionally balance, stoop, kneel, crouch, crawl, and climb ramps and stairs but never climb ladders, ropes, or scaffold[s]. She can frequently handle and finger bilaterally. She must avoid concentrated exposure to humidity and wetness, to hazardous machinery, unprotected heights[,] and open flames. She is limited to simple, routine, and repetitive tasks in a work environment free of fast-paced production requirements and involving only simple, work-related decisions with few, if any, workplace changes.

R. 18–19.

At step four, the ALJ found that given Ms. Siderias' RFC, she could still perform her past relevant work as a tanning salon attendant. R. 22. As such, Ms. Siderias was not disabled as defined by the Social Security Act.[8]

In the alternative, the ALJ proceeded to step five and similarly concluded that Ms. Siderias was not disabled, as the ALJ identified multiple jobs in the national economy that she could perform. R. 22–23.

## II. STANDARD OF REVIEW

Judicial review of a social security disability determination is "limited." *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005). The agency's factual findings are "conclusive," and therefore must be upheld, if they are supported by "substantial evidence." *See Biestek v. Berryhill*, 139 S. Ct. 1148, 1152 (2019) (citing 42 U.S.C. § 405(g)). Substantial evidence is not a demanding standard. *Id.* at 1154. All it means is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* at 1153 (quoting *Consolidated Edison Co.*

---

Security Administration has instructed that "light work generally requires the ability to stand and carry weight for approximately six hours of an eight hour day." *Fargnoli v. Massanari*, 247 F.3d 34, 40 (3d Cir. 2001) (quoting *Jesurum v. Sec'y of Health & Human Servs.*, 48 F.3d 114, 119 (3d Cir. 1995)); *see also* SSR 83-10, 1983 WL 31251 (Jan. 1, 1983).

[8] Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

4

*v. NLRB*, 305 U.S. 197, 229 (1938)). This is "more than a mere scintilla but may be somewhat less than a preponderance of the evidence." *Rutherford*, 399 F.3d at 552 (quoting *Ginsburg v. Richardson*, 436 F.2d 1146, 1148 (3d Cir. 1971)). When reviewing for substantial evidence, courts cannot "re-weigh the evidence or impose their own factual determinations." *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011). However, any legal conclusions are reviewed under a plenary standard. *Hess v. Comm'r of Soc. Sec.*, 931 F.3d 198, 208 n.10 (3d Cir. 2019).

### III.   DISCUSSION

Ms. Siderias appeals the ALJ's unfavorable decision on two grounds. First, she claims that the ALJ's RFC determination is inaccurate. *See* Doc. No. 15, at 10–24. Second, even if the RFC determination were accurate, she alleges that she still would not be able to perform the jobs relied upon by the ALJ at steps four and five. *Id.* at 24–29. The Commissioner responds that substantial evidence supports both the ALJ's RFC assessment and the conclusion, at step four, that she could perform her past relevant work as a tanning salon attendant.[9] Doc. No. 20, at 6–15. After careful review, I agree with Ms. Siderias that the ALJ's RFC analysis is flawed.

#### A.  The ALJ erred in evaluating Ms. Siderias' residual functional capacity.

In her initial claim, Ms. Siderias attacks the ALJ's analysis and ultimate determination of her RFC, particularly as it relates to her physical abilities. *See* Doc. No. 15, at 10–24. Among the issues she raises is the ALJ's mischaracterization of, and confusing citations to, the record. *See id.* at 13–17. According to Ms. Siderias, these errors undermine the ALJ's opinion such that it is unsupported by substantial evidence and therefore remand is required.

---

[9] Because the ALJ's step five findings were only in the alternative, the Commissioner chose not to respond to Ms. Siderias' allegations that the ALJ erred at that step. *See* Doc. No. 20, at 15.

To better understand Ms. Siderias' argument, some context regarding the ALJ's RFC analysis is necessary. The ALJ began with a summary of Ms. Siderias' allegations of pain and how she believed her pain impacted her ability to work. *See* R. 19.[10] The ALJ then rejected the extent to which Ms. Siderias claimed her pain limited her because, in his opinion, the objective medical evidence provided "little support." *See id.* For proof,[11] the ALJ pointed to physical examinations that showed "generally unremarkable results," such as "no apparent or acute distress, no reduced strength, intact range of motion, normal muscular tone, intact sensation and reflexes, normal gait, device-free ambulation, intact coordination, negative Faber sign bilaterally, negative compression test, and negative straight leg raises." R. 19–20.

However, the ALJ conceded that the record contained "occasional, less optimal findings" that did support Ms. Siderias' complaints of pain. R. 20. These "less optimal" findings included:

> musculoskeletal tenderness, positive straight leg raises on the right at sixty degrees, pain with palpation of the right lower lumbar area and the right SI joint, reduced range of motion of the lumbar spine, tenderness and reduced range of motion of the cervical spine,

---

[10] The following is the ALJ's summarization of Ms. Siderias' allegations of pain:

> The claimant alleged she was rendered unable to work due to sacroiliac joint dysfunction, neck pain and limited mobility of the neck, high liver enzymes, non-alcoholic fatty liver disease, herniated discs, irritable bowel syndrome, asthma, degenerative joint disease of the lower leg, arthritis of the right hand, and anxiety. The claimant further alleged these impairments affect her ability to lift, squat, bend, stand, reach, walk, sit, kneel, climb stairs, and use her hands. The claimant reported a history of low back pain with worsening since June 2018; she also reports pain symptoms radiating to her right lower extremity and right lower extremity weakness. She further reported neck pain, mid back pain, upper and lower extremity pain, headaches, dizziness, loss of sleep, anxiety, feeling overwhelmed, and excessive worry and stress. The claimant testified to not being able to work due to her back issues. She noted she has been in physical therapy for it for six months, indicating she has had some relief but still cannot stand or sit for long. She estimated she can sit for fifteen minutes, stand for ten minutes, walk for half a block, and lift about five pounds. She explained the arthritis in her right hand prevents her from cutting hair. She noted her medications can make her groggy, tired, and dizzy and can give her headaches. She indicated her symptoms are aggravated by weather, being in one position too long, driving, and trying to grab something with her right hand.

R. 19 (internal citations omitted).

[11] Because Ms. Siderias primarily takes issue with the ALJ's treatment of her allegations of pain, I have focused my attention on that aspect of the RFC analysis.

> muscle spasms in the shoulders, slightly reduced strength of the lower extremities, [and] guarded or antalgic gait . . . . Medical imaging from February 2017 revealed multilevel degenerative changes with disc protrusions at L3-4 and L4-5 that may possibly affect the L4 and L5 nerve roots. Imagining from October 2019 shows the degenerative changes from the 2017 imaging and mild disc bulges at L1-2, L2-3, and L5-S1.

R. 20 (internal citations omitted).

The remainder of the ALJ's review of the medical records was a short summary of the steps Ms. Siderias took to treat her pain. *Id.* Specifically, he noted that Ms. Siderias "received lumbar epidural steroid injections, physical therapy, chiropractic care, pain management services, . . . muscle relaxants, anti-inflammatories, opioid painkillers, and other prescription medication to address her impairment." *Id.* With respect to her physical therapy, he found that the records indicated that Ms. Siderias "was continuing to progress." *Id.* He further found that there was "no documentation in the record of significant medication side effects or of ineffective medication." *Id.*

Taking into consideration both the positive and negative findings in the record, as well as the medical imaging, the ALJ concluded that Ms. Siderias' severe impairments caused her some limitations but that she was still able to work at the light exertional level "with some postural, manipulative, [and] environmental" restrictions. *Id.* He explained that this RFC accommodates Ms. Siderias' "musculoskeletal tenderness, reduced range of motion of her lumbar and cervical spine, reduced strength of her lower extremities, [and] antalgic gait." *Id.* The environmental restrictions were included based on Ms. Siderias' "subjective complaints of medication side effects and aggravation of symptoms due to changes in the weather." *Id.* And the manipulative

restrictions were based on Ms. Siderias' "reports of radiating symptoms into the upper extremities and her complaints of difficulties grabbing items."[12] *Id.*

Ms. Siderias' now challenges this assessment of her complaints of pain. *See* Doc. No. 15, at 12–20. When deciding a claim for disability, the ALJ must consider a claimant's description of her pain and evaluate the extent to which that description is reasonably consistent with the objective medical and other record evidence. *See* 20 C.F.R. § 416.929(a). Although a description of one's pain, without more, is not enough to establish disability, such allegations combined with objective medical evidence can lead to a favorable disability determination.[13] *See id.* To assess whether a claimant's pain is disabling, the ALJ must (1) determine whether the claimant has a medically determinable impairment that could reasonably be expected to produce pain; and if so, (2) then evaluate the intensity, persistence, and limiting effects of that pain. SSR 16-3p, 2016 WL 1119029, at *2 (Mar. 16, 2016). At the second step of this analysis, the ALJ will consider not just the record medical evidence but also the claimant's daily activities; the location, duration, frequency, and intensity of the pain; any precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of pain medications; treatments, or other measures, taken for pain relief; and any other factors that concern the functional limitations caused by the pain. *See id.* at *7 (citing to 20 C.F.R. § 416.929(c)(3)).

---

[12] Confusingly, the ALJ made the determination as to Ms. Siderias' RFC, as summarized above, before evaluating the medical opinion evidence in the record, *see* R. 21, and rendering his conclusion that Ms. Siderias' statements as to the intensity, persistence, and limiting effects were "inconsistent with the objective evidence in the case record," *see* R. 22.

[13] "There must be objective medical evidence from an acceptable medical source that shows you have a medical impairment(s) which could reasonably be expected to produce the pain or other symptoms alleged and that, when considered with all of the other evidence (including statements about the intensity and persistence of your pain or other symptoms which may reasonably be accepted as consistent with the medical signs and laboratory findings), would lead to a conclusion that you are disabled." 20 C.F.R. § 416.929(a).

Where, such as here, the ALJ assesses the claimant's allegations of pain as part of the RFC analysis, he must consider "all relevant evidence" and provide "a clear and satisfactory" explanation of his decision.[14] *See Fargnoli v. Massanari*, 247 F.3d 34, 41 (3d Cir. 2001) (quoting *Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981)). Such an explanation must contain enough detail to permit meaningful judicial review. *See Burnett*, 220 F.3d at 119–20. Otherwise, the reviewing court is unable to discern whether the ALJ's decision is supported by substantial evidence. *See Cotter*, 642 F.2d at 705.[15]

This is especially true when there is "conflicting probative evidence in the record." *See Fargnoili*, 247 F.3d at 42. While the ALJ may weigh the evidence and choose what evidence to credit, he cannot reject contradictory evidence for "no reason or the wrong reason." *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999) (quoting *Mason v. Shalala*, 994 F.2d 1058, 1066 (3d Cir. 1993)). Therefore, an adequate explanation is needed to ensure that the ALJ's reason for discounting significant contradictory evidence was proper. *Cotter*, 642 F.2d at 706–07. Failure to mention or explain how this evidence was evaluated is reversible error. *Burnett*, 220 F.3d at 122.

Here, the ALJ made significant missteps in explaining his assessment of Ms. Siderias' pain. He failed to meaningfully engage with the hundreds of pages of record evidence, instead boiling them down into three relatively meager paragraphs.[16] *Compare* R. 19–20 (ALJ opinion),

---

[14] Relevant evidence includes "medical records, observations made during formal medical examinations, descriptions of limitations by the claimant and others, and observations of the claimant's limitations by others." *Fargnoli*, 247 F.3d at 41 (citing to 20 C.F. R. § 404.1545(a)).

[15] *See also id.* ("In our view an examiner's findings should be as comprehensive and analytical as feasible and, where appropriate, should include a statement of subordinate factual foundations on which ultimate factual conclusions are based, so that a reviewing court may know the basis for the decision. This is necessary so that the court may properly exercise its responsibility under 42 U.S.C. § 405(g) to determine if the Secretary's decision is supported by substantial evidence." (quoting *Baerga v. Richardson*, 500 F.2d 309, 312 (3d Cir. 1974))).

[16] The Third Circuit once criticized an ALJ's decision that simply described "four diagnostic tests and five treatment notes," despite there being over a hundred pages of "relevant, probative treatment notes" that detailed the claimant's condition and progress. *Farngoli*, 247 F.3d at 42. The Court explained that the "disparity between the actual record and the ALJ's sparse synopsis of it makes it impossible for us to review the ALJ's decision, for we 'cannot tell if

9

*with* R. 274–879, 901–09, 916–1338 (records regarding Ms. Siderias' physical impairments). Those paragraphs contain no discussion of any specific treatment notes; they just list certain negative findings in the record, certain positive findings in the record, and treatments Ms. Siderias tried. *See* R. 19–20. This explanation is so lacking in detail and analysis that it prevents meaningful judicial review.

For example, the ALJ briefly lists the various pain treatments Ms. Siderias has sought, *see* R. 20, but that is all he does. He does not explain their effectiveness or why they supported his rejection of Ms. Siderias' alleged limitations due to pain.[17] *See id.* Although he does mention that Ms. Siderias' physical therapy was "continuing to progress," he does not explain the extent of her progress or the limitations that may remain.[18] *See id.*

---

significant probative evidence was not credited or simply ignored." *Id.* (quoting *Burnett*, 220 F.3d at 121). While an ALJ is not necessarily expected to reference every treatment note contained in a large record, he must "consider and evaluate the medical evidence in the record consistent with his responsibilities under the regulations and case law." *Id.*

[17] The ALJ does later in that paragraph state that there was no documentation of ineffective medication, but he does not discuss the effectiveness of other treatments that Ms. Siderias sought. *See* R. 20. Moreover, that statement is wholly conclusory: it is not supported by any citation nor does he mention which medications he is referring to, making it especially hard to review the propriety of that determination.

[18] The page that the ALJ cited in support of this proposition was 12F/2 (located at R. 902), which is a record from Ms. Siderias' chiropractor, and not at all related to her physical therapy. (In fact, that record, from May 15, 2018, shows fixation, dyskinesia, and palpatory tenderness in the cervical region; edema and taut and tender fibers noted on cervical and lumbar palpation; fixation, dyskinesia, edema, and palpatory tenderness noted in the sacroiliac region; and gait abnormalities.) Giving the ALJ the benefit of the doubt, it appears he meant to cite to page 21F/2 (located at R. 1054), which is a summary from Ms. Siderias' physical therapy practice from August 29, 2019.

In that note, her physical therapy provider assessed Ms. Siderias' progress towards her various long-term goals. R. 1054. For instance, it was noted that she was progressing in her goal of normalizing strength throughout trunk and lower extremities for full ambulatory support and reciprocal stair climbing, but that Ms. Siderias demonstrated "persistent weakness despite gains." *Id.* She was also noted to progress toward her goal of decreasing pain and maintaining static position tolerance in sitting and stance, but that while her pain was "centralized," it "fluctuates in severity." *Id.*

Moreover, following this assessment, Ms. Siderias presented to physical therapy for the next month complaining of pain that she rated between five and seven out of a scale of ten. *See* R. 1057–77 (treatment notes from September 3, 5, 10, and 12, 2019). Notably, on September 10, 2019, Ms. Siderias' physical therapist noted increased symptom irritability and decreased prolonged positional tolerance for standing and sitting. *See* R. 1066. She observed lumbosacral hypomobility and pain provocation with accessory motion testing that decreased with manual therapy. *See id.* At her next physical therapy session two days later, and the last one recorded in the record,

Equally, if not more, problematic are the two paragraphs listing positive and negative findings. *See* R. 19–20. Of particular concern is the ALJ's citations to the record. Not only am I unable to parse out the ALJ's reasoning based on his citations to the record but a close examination of the citations results in more confusion. As Ms. Siderias points out in her brief, *see* Doc. No. 15, at 14–15, many of the treatment notes cited as support of mostly normal findings include significant contradictory findings, yet the ALJ does not explain how those notes still support his assertion or why he disregarded the contradictory findings. For instance, below are some of the records cited by the ALJ in support of his conclusion that the records show mostly normal findings:

- The first record cited is from Ms. Siderias' pain management appointment on September 27, 2018. *See* R. 20 (citing to 17F/18, which is located at R. 1019). Looking at the entire treatment record from that day, Ms. Siderias presented to her doctor with right lower back pain that radiated down her right leg. R. 1017. She rated the pain as a seven on a scale of ten. *Id.* While the physical exam showed normal strength, ambulation without an assistive device, and a negative Faber sign, it also showed musculoskeletal tenderness, a positive straight leg raise, and pain with palpation of the right lumbar paraspinals and right SI joint. R. 1019. Based on this, Ms. Siderias was scheduled for a lumbar epidural steroid injection at the right L5-S1. *Id.*

- The ALJ also cited to a record from when Ms. Siderias' visited her primary care provider, on November 5, 2018, to address her laryngitis and upper respiratory infection. R. 20 (citing to 26F/24, which is located at R. 1216). Unsurprisingly, it does not appear that Ms. Siderias' provider assessed her chronic pain at all that day. Notably, the physical exam excluded any reference to her musculoskeletal system—positive or negative. As such, there is no evidence in this record of mostly "unremarkable" findings regarding her pain. *See* R. 1216.

- Another citation was to the July 10, 2019, records from her primary care physician's practice. *See* R. 20 (citing to 25F/1, which is located at R. 1195). Ms. Siderias visited the practice that day due to pain in her left knee caused by a recent fall. R. 1195. At that appointment, the physical exam revealed antalgic gait with crutches, left knee mild edema, and decreased range of motion in the left knee secondary to pain in all planes.[19]

---

Ms. Siderias reported feeling better than she did at her last session, but her provider noted that she was still "[c]hallenged" with neuromuscular ("NMR") exercises. R. 1058–61.

[19] Based on my review of the record, Ms. Siderias may have also had a lumbar muscle spasm. *See* R. 1183.

> *Id.* It was noted that she had full strength in her left lower extremity. *Id.* Following an x-ray, Ms. Siderias was diagnosed with a contusion and a mild sprain, and she was directed to use the crutches for support, take ibuprofen for the pain and inflammation, and only take Vicodin if the pain is severe. R. 1196.[20]

- Other records cited from Ms. Siderias' primary care provider included a note from June 13, 2019. R. 20 (citing to 26F/12, which is located at R. 1204). Ms. Siderias presented with complaints of neck pain, *see* R. 1200, and her physical exam revealed decreased range of motion and spasm in her cervical back with no tenderness or swelling, *see* R. 1204. She was thereafter referred to physical therapy. *Id.*

- The ALJ also cited to one page of Ms. Siderias' initial physical therapy evaluation from November 29, 2018. *See* R. 20 (citing to 24F/6, which is located at R. 1181). At that evaluation, Ms. Siderias complained primarily of right-sided lower back and leg pain that she rated to be a six out of ten in severity. R. 1180. On examination, the physical therapist found some relatively "unremarkable" findings, such as negative Faber and compression tests, negative straight leg raises, and the lack of an ambulation device. But, at the same time, the therapist also found that Ms. Siderias had decreased lumbar range of motion (later characterized as "abnormal and restricted") and a guarded gait with short-stride length. *See* R. 1181–82. The physical therapist then rated Ms. Siderias' prognosis as "poor."[21] R. 1182.

- Another citation was to Ms. Siderias' physiatry spine evaluation from September 25, 2019. R. 20 (citing to 32F 13, 14, which are now located at R. 1309–10). Her spine exam revealed certain normal findings such as negative straight leg raise and slump test, gait without an assistive device, intact reflexes, and normal muscle tone. R. 1309–10. But the exam also revealed significant non-normal findings, such as non-normal range of motion in all planes and limited due to pain, lumbar facet load not normal with pain, all sacroiliac provocative tests (Faber, pelvic compression, and Fortin Finger's) were positive on the bilateral, and muscle tenderness on the sacroiliac joint and left lumbar paraspinal muscle. *Id.*

Having reviewed the ALJ's decision, including the records cited therein, I cannot determine whether substantial evidence supports the conclusion that Ms. Siderias' physical examinations demonstrated "generally unremarkable results."

---

[20] The ALJ also cited to records from a follow-up visit that occurred a week later. R. 20 (citing to 26F/6, which is located at R. 1210). Ms. Siderias had continued pain from her fall, and the physical exam that day showed decreased range of motion in the lumbar back but with no swelling or tenderness. R. 1210. Her provider diagnosed her with lumbar radiculopathy and referred her to physical therapy. *Id.*

[21] Support for the poor prognosis was Ms. Siderias' high STaRT score, depression, and anxiety. R. 1182.

Moreover, the ALJ's errors are not cured by the subsequent paragraph that seemingly recognizes "less optimal" findings in the record, including citations to some of these same treatment notes. *See* R. 20. Similar to the preceding paragraph, the ALJ merely lists, devoid of context, some contradictory findings in the record, but he does not explain why these findings are rejected or given less weight. To the extent that he perceives such findings to be "occasional," he fails to provide any narrative to support such a conclusory statement, and it is not evident from the records cited. As it stands now, I am unable to determine whether substantial evidence supports the ALJ's RFC determination.[22] Therefore, remand is necessary for the ALJ to consider all the probative evidence in the record and provide "a clear and satisfactory" explanation of his RFC determination.[23]

### B. Ms. Siderias' remaining claims need not be addressed on appeal.

Ms. Siderias' second claim challenges the ALJ's conclusions at steps four and five. Doc. No. 15, at 24–29. She contends that contrary to the ALJ's finding, she is unable to perform her past relevant work as a tanning salon attendant nor is she able to perform the alternative jobs of cashier, retail marker, and routing clerk. *Id.* The Commissioner, in response, argues that there is substantial evidence to support the ALJ's step-four determination that Ms. Siderias could work in her previous position and, therefore, she is not disabled. Doc. No. 20, at 14–15.

---

[22] The Commissioner's argument that substantial evidence supports the ALJ's opinion is unpersuasive. The Commissioner never engages with Ms. Siderias' contentions that the ALJ mis-cited and mischaracterized the record. *See* Doc. No. 20, at 7–9. Rather, the Commissioner relies on the one paragraph where the ALJ laid out his ultimate findings as to the extent of Ms. Siderias' limitations. *See id.* at 9. However, for all the reasons explained above, that one paragraph (which merely stated the ultimate RFC determination) fails to save the ALJ's faulty analysis.

[23] Ms. Siderias also challenges the ALJ's treatment of the medical opinion evidence in the record. However, because the ALJ's assessments of these opinions are closely tied to his review of the objective medical evidence (and whether he felt those opinions are or are not consistent with those records), and because I am ordering him on remand to reconsider all the objective medical evidence, I find it is not prudent to comment on these challenges at this time.

Given that I have already found that this matter must be remanded for errors that preceded these determinations, the remaining issues need not be resolved at this time. The ALJ has been directed to reconsider the record evidence at the RFC stage, which may ultimately impact the RFC determination and render these issues moot.

However, in passing, Ms. Siderias does note that the ALJ and vocational expert relied on a job listing (tanning salon attendant) that is not included in the Dictionary of Occupational Titles ("DOT"). Doc. No. 15, at 24. It appears that there is some confusion among courts as to whether tanning salon attendant is an occupation listed in the DOT. *See, e.g.*, *Toennies v. Comm'r of Soc. Sec.*, No. 19-2261, 2020 WL 2841379, at *21–22 (N.D. Ohio June 1, 2020) (collecting cases) ("Different courts have reached different conclusions under varying circumstances as to whether 'tanning salon attendant' is an occupation in the DOT."). Therefore, in the event the ALJ reconsiders, on remand, Ms. Siderias' ability work as tanning salon attendant, he may want to address, or ask the vocational expert about, this alleged discrepancy.

## IV.   CONCLUSION

For the reasons explained above, Ms. Siderias' request for review is **GRANTED.** The ALJ's RFC determination was not supported by substantial evidence. Therefore, the final decision of the Commissioner of Social Security is **REVERSED**, and this matter is **REMANDED** to the Commissioner for further proceedings in accordance with this opinion. An appropriate order follows.

BY THE COURT:

_s/Pamela A. Carlos_____
PAMELA A. CARLOS
U.S. Magistrate Judge